Elgin D. Maine v. Commissioner.
Maine v. Commissioner
Docket No. 26995.
United States Tax Court
1952 Tax Ct. Memo LEXIS 268; 11 T.C.M. (CCH) 324; T.C.M. (RIA) 52095; April 4, 1952
William D. Krebs, Esq., for the petitioner. Joseph F. Rogers, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: Respondent determined a deficiency in income tax for the calendar year 1947 against petitioner in the amount of $190. The question presented is whether petitioner living with his parents, in their home, contributed over one-half of their support so as to be entitled to the $500 exemption for each of them as dependents. Findings of Fact Petitioner is an individual and a resident of Potsdam, New York. He filed his income tax return for the taxable year 1947 with the collector *269 for the 21st district of New York. During 1947 petitioner was employed by the Racquette River Paper Company at Potsdam. His total wages for the year amounted to $2,427.76. The company withheld Federal income taxes in the sum of $278 and social security deductions amounting to $24.33. He was paid each week by a check, which varied according to the hours of work done. He received 51 checks during 1947, the aggregate sum of which was $2,090.18. Petitioner, during the taxable year, lived in the home of his parents, Carroll and Lucy Maine. The house was a story and a half, with seven rooms, and was valued at $4,000. Its rental value was approximately $40 per month. Petitioner's parents also owned the furniture in the home which, after allowing for depreciation, had a value of $300 to $400. Petitioner's parents became entitled to social security benefits in January 1947. Carroll and Lucy Maine received respectively monthly payments of $34.46 and $17.38. During 1947 Carroll Maine received an aggregate of $322.86 and Lucy received a total of $191.18 of such benefits. The only gross income received by Carroll Maine was in January 1947 when he worked and earned less than $15 for had he earned *270 that much or more he would have been deprived of his social security payment. He became seriously ill during November and December, and died in January 1948. Petitioner's mother usually bought the food and groceries and paid the other household expenditures. The groceries were mostly paid for from money she received from petitioner and the other expenditures were made primarily from the social security checks received by her and her husband. Mrs. Maine maintained a bank checking account which at the end of the year 1946 had a balance of $230.10, and on or about October 3, 1947, showed a balance of $203.35. Periodically she made deposits in petitioner's name in a building and loan association, which account was opened in October 1946, and it had a balance of $180.56 on December 31, 1946. She deposited in this account during 1947 a total of $460. On December 31, 1947, including the above balance and accrued interest, the account had grown to the amount of $650.81. No withdrawals were made from the account during 1947. All but seven of petitioner's pay checks passed through the building and loan association as indicated by the association's stamped endorsement thereon. Five of the *271 seven checks bore no other endorsement than that of petitioner. One check bore the endorsement of petitioner and his mother and the other check, in addition to petitioner's endorsement, bore the stamped endorsement of Clifford E. Tolman, presumably [the owner of] one of the stores where Mrs. Maine bought groceries. Usually Mrs. Maine received $15 from petitioner's weekly checks. Sometimes she received an additional amount from petitioner. Petitioner used the balance of his salary for his own personal requirements and pleasure. Board and room was worth $15 per week. Besides petitioner there were six other children, grown and married, some of whom sent small amounts of money in the form of gifts to their mother for Easter, Christmas and her birthday. During the summer two or three of the children with their families visited petitioner and his parents. One family had three children and another family had two. They usually made their visits separately for a week or ten days and during that time contributed some groceries. All told, the visits extended over a period of approximately four weeks, during which time petitioner gave up his room in the house and slept on a cot or bed in *272 the barn. Petitioner ate the morning and evening meals at home and took a prepared lunch from there to his work. During the year petitioner paid $200 cash for a lot and $325 for a garden tractor. He had a large garden on the lot and a small one at the home. He spent about $25 on the garden. At home he raised small vegetables and tomatoes, and in the large garden corn, vegetables and strawberries. He valued the produce from the gardens at $100. Some of the produce was canned and some given away. He furnished corn stalks as feed for the cow of his brother who resided in Potsdam. Petitioner also owned and maintained two automobiles. A relative had given the family a Hudson car which petitioner permitted his mother to operate. One of the petitioner's sisters lived in Potsdam and operated a filling station and a grocery store where Mrs. Maine made some of her purchases. Mrs. Maine bought her own clothing and such things as were needed by her husband. Petitioner bought his clothing, spending $100approximately therefor. He also purchased during the taxable year about $200 or $250 worth of United States Government bonds. His personal expenditures and savings amounted in the aggregate *273 to more than $1,279.75. Some of the bills paid by petitioner's mother were as follows: Hospital and Doctors' bills, approximately $200
Taxes, approximately
120
Coal
108
Repairs on house, approximately
100
Insurance on furniture
5
Total $533
On or about June 8, 1949, petitioner made a statement on a prepared form to the Internal Revenue Collector in regard to his dependents for 1947, which statement, in part, is as follows: Amount you
Name of
Income of
contributed
Dependent(s)
Age
Relationship
Dependent(s)
to support
Mr. Carroll E. Maine
71
Father $450
Mrs. Lucy Maine
65
Mother
225 $500
More than half of the support of Carroll and Lucy Maine during the taxable year 1947 was not provided by petitioner. Opinion Petitioner claims the statutory $500 credit for each of his parents because of their alleged dependency on him. Respondent's position is that petitioner has not shown that he has contributed more than half of the parents' support, as required by Section 25 of the Internal Revenue Code[1] and Supplement to Regulations 111, Section 29.25-3. [2]
*274 Petitioner bears the burden of establishing that fact, if he is to show error in the deficiency determined by respondent. In our opinion he has failed in his proof. Actual financial dependency of the parents on petitioner fails to appear in the record. The primary evidence adduced on the point is the testimony of petitioner and his mother submitted by deposition and the supplemental testimony of petitioner at the hearing. Their testimony was general, indefinite and inconclusive with respect to the contributions made by petitioner and the expenditures made by his mother. Petitioner's testimony at the hearing was intended to clarify his deposition in which he had stated that he had contributed about $700 to the support of his parents. At the hearing, although his recollection was supposed to have been refreshed by his savings account book and his pay checks, he made only a general observation, "I think I gave pretty close to $1,000 all together." This was the third figure he had given, his first having been " $500," as stated in his statement to the collector when he was first called on to establish the dependency of his parents. The evidence does show quite definitely that petitioner *275 lived with his parents in their home, that he contributed about $15 per week, which was equivalent to board and room, that his parents received at least $573.54 in social security benefits and that of the $2,090.18 take-home pay of petitioner, practically all was expended to his personal benefit. According to his testimony he accounted for $1,279.75 of his salary as expended for his use and, including the value of his board and room at $15 per week or $780 for 52 weeks, practically all his salary was expended for the benefit of himself, leaving little or nothing for him to contribute to the support of his parents. It is not shown that his mother and father could not maintain themselves. On brief, petitioner's counsel states that petitioner paid $200 for the lot in 1946 and it should not be considered as having been expended by him in the taxable year 1947, despite the testimony of petitioner. Counsel also explains that the $200 or $250 "worth of bonds" did not mean face value. Whether counsel is correct or not, the illustrations show the type of, and discrepancies in, the record before us. We need not recite other inconsistencies appearing in the record or the improbabilities implied *276 by the witnesses. The evidence before us is too indefinite to justify a holding of error on the part of respondent. Decision will be entered for the respondent. Footnotes
1. SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. * * *
(b) Credits for Both Normal Tax and Surtax. - (1) Credits. - There shall be allowed for the purposes of both the normal tax and the surtax, the following credits against net income: * * *
(C) An exemption of $500 for each dependent whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $500, except that the exemption shall not be allowed in respect of a dependent who has made a joint return with his spouse under section 51 for the taxable year beginning in such calendar year. * * *
(3) Definition of Dependent. - As used in this chapter the term "dependent" means any of the following persons over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer: * * *
(D) the father or mother of the taxpayer * * * ↩
2. SUPPLEMENT TO REGULATIONS 111. SEC. 29.25-3. PERSONAL EXEMPTION AND SURTAX EXEMPTIONS. - * * *
(b) Taxable Years Beginning after December 31, 1943. * * *
Whether or not over half of a person's support * * * was received from the taxpayer, shall be determined by reference to the amount of expense incurred by the taxpayer for such support. * * *↩